IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBERT STEED, MAFAYETTE FIELDS,
LAWRENCE NORTHERN, JAMES PITTMAN,
and ELPIDIO JUAREZ,

                    Plaintiffs,

    v.

JOHN DOE A-UNIT 3RD SHIFT OFFICER,           OPINION & ORDER
C/O BURKE, C/O HOLSCLAW, C/O LIEBL,
UNKNOWN 3RD SHIFT SEGREGATION OFFICER,      14-cv-747-jdp
C/O THILL, KOREEN FRISK, TONI JOHNSON,
RN JULIE, CANDANCE WARNER,
ANTHONY HENTZ, CARROL WALTER,
JEAN FELBER, and JOHN OR JANE DOE, OF THE
RESTRICTIVE STATUS HOUSING UNIT,

                    Defendants.[1]

---

Plaintiffs Robert Steed, Mafayette Fields, Lawrence Northern, James Pittman, and Elpidio Juarez are prisoners in the custody of the Wisconsin Department of Corrections. They have submitted a civil complaint under 42 U.S.C. § 1983, alleging that prison officials at the New Lisbon Correctional Institution maintained and followed a policy giving correctional officers, rather than medical staff, responsibility over medication distribution, leading to intentional or negligent failures to properly provide plaintiffs with their medications.

Although plaintiffs have joined their claims in one complaint, each of them must pay the full amount of the filing fee for this action. *Boriboune v. Berge*, 391 F.3d 852, 856 (7th Cir.

---

[1] The caption reflects the parties named in plaintiffs' amended complaint, Dkt. 17. I have amended the names of plaintiff Pittman and defendant Hentz to reflect the spellings prevalent in the complaint, as opposed to the names that appear to be misspelled in the caption.

2004). Each of the plaintiffs moves to proceed *in forma pauperis*, and each of them has made an initial partial payment of their respective filing fee as calculated by the court.

Plaintiffs have filed a motion to amend the complaint, Dkt. 16, and an amended complaint, Dkt. 17. I will grant the motion to amend and treat the amended complaint as the operative pleading. In screening the amended complaint, I must dismiss any portion that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. §§ 1915 and 1915A. In screening these pro se litigants' complaint, the court must read the allegations of the complaint generously. *See Haines v. Kerner*, 404 U.S. 519, 521 (1972).

After considering plaintiffs' allegations, I will allow them to proceed on their claims that are plausibly connected to the policy giving correctional officers responsibility over the medications. Because plaintiff Juarez's claims are not plausibly connected to the policy, I will sever his claims into a new lawsuit. Plaintiffs Steed and Northern, who have some claims plausibly connected to the policy and others that are not, will be given a chance to explain how they wish to proceed.

ALLEGATIONS OF FACT

Plaintiffs are bringing this lawsuit together because they believe that the incidents they describe below are all related. All of the plaintiffs were housed at the New Lisbon Correctional Institution (NLCI), and all of their allegations concern events taking place at NLCI. I will address each plaintiff's allegations separately.

**A. All plaintiffs**

The provision of medication to prisoners at NLCI is supervised by defendant Nurse Warner, the manager of the Health Services Unit. Plaintiffs believe that Warner's policy of having correctional officers distribute medications rather than nurses has led to the many problems documented below.

**B. Plaintiff Northern**

At some point in 2013, plaintiff Lawrence Northern filed a grievance against defendant Nurse Toni Johnson "complain[ing] about medical care." On May 9, 2013, Northern had surgery on one of his Achilles tendons, leaving a five-inch incision. Northern was prescribed daily changes of the dressing for this wound. Defendant Nurse Frisk completed a "Medical Restrictions/Special Needs" form setting up daily appointments in the Health Services Unit (HSU) for Northern to have his dressing changed. However, "on several occasions," defendant Nurse Johnson refused to change Northern's dressing in retaliation for him filing his previous grievance. Johnson told Northern to "put in a blue slip" even though he already had documentation authorizing the treatment. Because of the failure to change the dressing, Northern suffered pain and disfigurement.

Northern also alleges that he was prescribed Vicodin to treat his severe pain following the surgery. However, several times in the week following the surgery, defendant correctional officers John Doe A-Unit Third Shift Officer, Holsclaw, and Liebl would not administer the medication, leaving him to suffer severe pain.

**C. Plaintiff Pittman**

Plaintiff James Pittman has been diagnosed with "Dysthymic disorder," which is a type of long-term depression. A psychiatrist prescribed Pittman 60 milligrams of Mirtazapine

(two 30-milligram tablets) to be taken at bedtime. Nine times in 2014, defendant correctional officers Burke, Liebl, and Thill gave Pittman 105 milligrams of Mirtazapine (two 30-milligram tablets and one 45-milligram tablet). The extra medication caused Pittman lightheadedness, impaired vision, headaches, and dizziness.

### D. Plaintiff Fields

Plaintiff Mafayette Fields suffers from painful muscle twitches and restless leg syndrome, which he appears to be saying are caused by multiple sclerosis or Hutchinson's disease. Fields was prescribed Baclofen and Pramipexole.

On June 11, 2014, Fields was denied his medication by segregation unit staff. At 3:00 p.m., defendant correctional officer Holsclaw told Fields that she contacted defendant Nurse Frisk to ask about his medication but that it "did not arrive yet." At 9:30 p.m., Fields pressed the emergency call button in his cell, and a sergeant told him that the medication had still not arrived. At 10:30 p.m., Fields pushed the emergency call button again. Defendant correctional officer Burke told Fields that defendant Frisk had left for the day and that Fields "could take his medication tomorrow." The failure to provide Fields with his medication caused him sleep deprivation and severe pain. Fields also went without his medication on July 20 and 21, 2014.

### E. Plaintiff Steed

Plaintiff Robert Steed suffers from hypertension. I take Steed to be saying that he was prescribed Hydrochlorothiazide and Metoprolol to treat this malady, but that between July 15 and 23, 2014, defendant Nurse Julie B. did not give him that medication, causing him headaches, swelling of the ankles, and "dangerously high" blood pressure.

4

Also, while Steed was in the Restrictive Status Housing Unit (RSHU), John and Jane Doe staff members (who I infer to be correctional officers) failed to give Steed his prescribed Hydrochlorothiazide, Tylenol, and Vitamin D several times between January 7 and January 15, 2015. They are responsible for informing medical staff about the inventory of items on the medication chart so that they can be refilled when necessary. Steed believes that their failure to perform this task resulted in the deprivation of medications.

## F.  Plaintiff Juarez

Plaintiff Elpidio Juarez does not explain what malady he suffers from, but he was prescribed Gabapentin, an anticonvulsant used to treat seizures and pain. On February 13, 2015, defendant Nurse Carroll Walter told Juarez that his medication had arrived and that he could start taking it. But contrary to prison policy, she did not explain any of the side effects. Juarez was not aware that Gabapentin can cause dizziness, lack of balance, and drowsiness.

The next day, Juarez became dizzy and ill. Defendant Nurse Jean Felber told Juarez that this was a normal side effect and to drink more water. Felber did not examine him or schedule him to see a doctor. Later that day, Juarez became dizzy at the top of a flight of stairs, blacked out, and fell down the stairs. He was taken to the hospital. He now suffers from chronic back pain.

On April 10, 2015, Juarez was seen by defendant Nurse Anthony Hentz, who told Juarez that he would be starting a new medication, "Tamiramate." (My own research did not reveal any drug by that name; but perhaps the new drug is Topiramate, another anti-convulsant.) As with his Gabapentin, defendant Hentz did not inform Juarez about any of

5

the side effects. Juarez does not explain what happened afterward, but he states that his failure to be informed of the side effects led to a serious physical injury.

ANALYSIS

A.  **Multiple plaintiffs and defendants**

This case involves claims brought by multiple plaintiffs against multiple defendants. Under Federal Rule of Civil Procedure 20(a)(1), multiple people may join in one action as plaintiffs if they assert a right to relief "arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all plaintiffs will arise in the action." Similar language in Rule 20(a)(2) allows a plaintiff or plaintiffs to join defendants in a single lawsuit if all of the defendants were involved in the same alleged wrongdoing. Under Federal Rule of Civil Procedure 18, plaintiffs may then join individual unrelated claims against defendants who are already properly joined under Rule 20. *Pace v. Timmermann's Ranch & Saddle Shop Inc.*, 795 F.3d 748, 755 n.10 (7th Cir. 2015). The district court has wide discretion concerning the joinder of parties. *Chavez v. Ill. State Police*, 251 F.3d 612, 632 (7th Cir. 2001).

Plaintiffs' allegations generally concern separate incidents against discrete sets of defendants, which would usually be reason not to allow them to bring claims about those incidents together in a single lawsuit. But plaintiffs contend that all of their claims may be brought together because they all relate to a policy created by defendant Health Services Manager Warner that allows correctional officers to dispense and keep track of medications rather than having nurses or other medical staff do so. Plaintiffs argue that Warner has acted

6

with deliberate indifference toward their problems because it can be inferred that she is aware the problems caused by this system.

For the most part, I agree with plaintiffs' position that their claims may be joined together. Many of their claims are at least arguably related to the policy granting correctional officers responsibly to distribute and track medications. Those claims are:

- Northern's claims that defendant correctional officers Doe A-Unit Third Shift Officer, Holsclaw, and Liebl would not administer his medication.

- Pittman's claims that defendant correctional officers Burke, Liebl, and Thill gave him higher doses of his medication than was prescribed.

- Fields's claims that defendant correctional officers Holsclaw and Burke and defendant Nurse Frisk did not give him his prescribed medication.

- Steed's claims that defendants Doe RSHU staff members failed to give him his prescribed medications.

I will consider these claims to be properly joined in this lawsuit under Rule 20 and screen those claims below. If, as the case progresses, evidence submitted by the parties makes clear that a claim is not related to defendant Warner's policy, I may sever that claim from this lawsuit.

But some of plaintiff's claims do not properly belong in this lawsuit under either Rule 18 or Rule 20. Plaintiff Northern alleges that defendant Nurse Johnson retaliated against him by not dressing his wound, plaintiff Steed alleges that defendant Nurse Julie B. did not give him medication, and plaintiff Juarez alleges that defendant nurses Walter, Felber, and Hentz failed to warn him about side effects of his medication that led to him being injured by falling down the stairs. None of these claims belong in this case because there is no reasonable inference that nursing staff's failures have anything to do with defendant Warner's policy handing responsibly over medication to correctional officers. Plaintiffs contend that Warner

7

acted with deliberate indifference toward them by placing correctional officers in charge of medications rather than nurses, *see* Dkt. 17, at 10, so the policy cannot possibly be responsible for the actions of the nurses themselves.[2] I will dismiss each of these defendants from the lawsuit.

Because none of plaintiff's Juarez's allegations are connected to Warner's policy, and because he has already committed to one lawsuit by paying an initial partial payment of the filing fee, I will sever his claims into a new lawsuit. I will screen his claims in a separate order.

Both plaintiffs Northern and Steed have claims that belong in this lawsuit but additional claims that do not belong. The claims that do not belong in this lawsuit may be brought in separate lawsuits. They have each paid one initial partial payment, so I will give each of them a choice. Each of them may choose to:

- proceed with his claims that belong in this lawsuit, in which case I will dismiss his other claims;

- proceed with his claims that do not belong in this lawsuit, and I will open a new case for those claims, but dismiss his claims that are a part of this lawsuit; or

- proceed with both sets of claims, in which case he should submit an additional initial partial payment of the filing fee to be assessed in his second case.

I will give plaintiffs Northern and Steed a short period of time to decide how they wish to proceed.

## B. Screening plaintiffs' combined claims

For the claims that belong together in this lawsuit, plaintiffs allege that defendant Warner maintains a policy granting responsibility over provision of medications to

---

[2] Also, plaintiff Northern's retaliation claim against defendant Johnson has nothing to do with medication.

correctional officers instead of medical staff, which has resulted in numerous intentional or negligent acts by correctional officers that have harmed plaintiffs. I take plaintiffs to be raising both Eighth Amendment deliberate indifference and state-law negligence claims against each of the remaining defendants.

The Eighth Amendment prohibits prison officials from acting with deliberate indifference to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). A "serious medical need" may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584-85 (7th Cir. 2006). A medical need may be serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering, significantly affects an individual's daily activities, *Gutierrez v. Peters*, 111 F.3d 1364, 1371-73 (7th Cir. 1997), or otherwise subjects the prisoner to a substantial risk of serious harm, *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

At this stage of the proceedings, I will assume that each of plaintiffs' medical conditions is a serious medical need and that defendant Warner's actions in maintaining the policy and the other defendants' actions in failing to provide medication or in overdispensing it, plausibly shows that defendants acted with deliberate indifference toward plaintiffs. So I will allow each of plaintiffs' deliberate indifference claims to proceed.

Alternatively, plaintiffs allege that defendants' actions were negligent. A negligence claim under Wisconsin law includes the following four elements: (1) a breach of (2) a duty owed (3) that results in (4) harm to the plaintiff. *Paul v. Skemp*, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860. I will allow plaintiffs to proceed with their negligence claims for the same reason I am allowing them to proceed with their deliberate indifference claims.

The one exception is any claim against defendant Nurse Frisk, who was contacted by correctional officers Holsclaw and Burke about plaintiff Fields's medication. Fields does not allege that Frisk did anything to deprive him of medication (as opposed to Holsclaw and Burke, who I understand to have been responsible for maintaining an adequate supply of Fields's medication), and I have already concluded that actions by nursing staff are not part of the claims regarding Warner's policy. I will dismiss Frisk from the case.

At the preliminary pretrial conference that will be held later in this case, Magistrate Judge Stephen Crocker will explain the process for plaintiffs to use discovery to identify the name of the Doe defendants and to amend the complaint to include the proper identity of those defendants.

Finally, I note that there is a defendant named in the caption, "Unknown 3rd Shift Segregation Officer," who does not appear to the subject of any of plaintiffs' claims, or is possibly duplicative of defendant "Doe A-Unit Third Shift Officer." I will dismiss "Unknown 3rd Shift Segregation Officer" from the case.

ORDER

IT IS ORDERED that:

1. Plaintiffs' motion to amend the complaint, Dkt. 16, is GRANTED. Plaintiffs' amended complaint, Dkt. 17, is the operative pleading.

2. Plaintiffs Robert Steed, Mafayette Fields, Lawrence Northern, and James Pittman are GRANTED leave to proceed on their Eighth Amendment deliberate indifference and state-law negligence claims that defendants Warner, John Doe A-Unit Third Shift Officer, Holsclaw, Liebl, Burke, Thill, and John and Jane Doe RSHU staff members injured them by adhering to a policy giving correctional officers responsibility over medication distribution and failing to fulfill their responsibilities under this policy.

3. Plaintiffs are DENIED leave to proceed on any claims against defendant Frisk.

4. Plaintiff Juarez's claims are SEVERED from this lawsuit. The clerk of court is directed to open a brand-new lawsuit containing those claims. Juarez will not owe a filing fee for the present case, and the initial partial payment of the filing fee he has already submitted will be applied to the new case.

5. Plaintiffs Northern and Steed may have until April 12, 2016, to inform the court how they would like to proceed with their claims that are not properly joined in this lawsuit, as discussed in the opinion above.

6. Defendants Frisk, Unknown 3rd Shift Segregation Officer, Johnson, Julie B., Walter, Felber, and Hentz are DISMISSED from this lawsuit.

7. Under an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiffs' amended complaint and this order are being sent today to the Attorney General for service on defendants. Under the agreement, the Department of Justice will have 40 days from the date of the Notice of Electronic Filing of this order to answer or otherwise plead to plaintiffs' complaint if it accepts service on behalf of defendants.

8. For the time being, plaintiffs must send defendants a copy of every paper or document that they file with the court. Once plaintiffs have learned what lawyer will be representing defendants, they should serve defendants' lawyer directly rather than defendants themselves. The court will disregard any documents submitted by plaintiffs unless they show on the court's copy that they have sent a copy to defendants or to defendants' attorney.

9. Plaintiffs should keep a copy of all documents for their own files. If plaintiffs do not have access to a photocopy machine, they may send out identical handwritten or typed copies of their documents.

10. If any of the plaintiffs are transferred or released while this case is pending, it is that plaintiff's obligation to inform the court of his new address. If he fails to do this and the defendants or the court are unable to locate him, his claims may be dismissed for his failure to prosecute them.

Entered March 22, 2016.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge