IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ELPIDIO JUAREZ,

       Plaintiff,

 v.                 OPINION & ORDER

ANTHONY HENTZ, CAROL WALTER,      16-cv-181-jdp
and JEAN FELBER,

       Defendants.[1]

---

  Pro se plaintiff Elpidio Juarez, a prisoner currently housed at the Redgranite Correctional Institution, is proceeding on Eighth Amendment and state-law negligence claims against defendant prison officials at the New Lisbon Correctional Institution for failing to warn him about side effects of medications they gave him or otherwise help him avoid the risk of harm he faced from those medications. After taking one of the medications, Juarez fell down the stairs.

  The parties have filed dueling motions for summary judgment. After considering the parties' submissions, I will grant defendants' motion and deny Juarez's. I will dismiss Juarez's Eighth Amendment claims because no reasonable jury could conclude that defendants acted with deliberate indifference toward a substantial risk of harm, and I will dismiss Juarez's negligence claims because he failed to comply with Wisconsin's notice-of-claim statute.

---

[1] I have amended the caption to show the spelling of defendants' names as reflected in their briefing.

## FINDINGS OF FACT

The following facts are drawn from the parties' summary judgment submissions and are undisputed unless otherwise noted.

Plaintiff Elpidio Juarez is an inmate in the custody of the Wisconsin Department of Corrections (DOC) and was housed at New Lisbon Correctional Institution (NLCI) at the times relevant to this lawsuit. Defendants Carol Walter, Jean Felber, and Anthony Hentz were employed by the DOC as nurses at NLCI at the times relevant to this lawsuit.

On February 10, 2015, Juarez had an off-site medical appointment with a neurologist for ongoing treatment of a hand tremor. At that appointment, the neurologist recommended a Gabapentin prescription because Juarez had not tolerated side effects of two previous medications. The parties dispute exactly what the neurologist told Juarez about this medication. Defendants cite a medical note stating that the doctor told Juarez that his prescription was being changed to Gabapentin and she told him about the "common adverse side effects" of that medication. Juarez says that the doctors said nothing about the new medication.

On February 13, 2015, defendant Walter told Juarez that his medication had arrived at the prison, and she told him to take it three times a day: morning, noon, and bedtime. Walter did not tell him about any side effects of this medication, even though Division of Adult Institution regulations state that nurses have a duty to explain the side effects of medications to prisoner patients.

Juarez started taking Gabapentin that evening. The next day, Juarez took a dose around 7 a.m. Later that morning, when he went to the Health Services Unit (HSU) to receive another dose around 11 a.m., he asked to see a nurse. Defendant Felber came to the

HSU door. Juarez told Felber that he felt dizzy and ill after starting his new medication. When Felber asked Juarez for the name of the medication, he told her it was Gabapentin. Juarez told Felber that the symptoms had not subsided and he had been feeling "like this" all morning. Felber responded, "[O]h, that's just part of the side effects, you just need to drink more liquids," and she told Juarez to return to his unit. Juarez says that he asked Felber, "[A]re you sure?" to which Felber responded, "Yes! Just go back to your unit." Juarez took the dose of Gabapentin and went back to his cell. Felber did not take Juarez's vitals, conduct any physical examination, or warn him about taking the stairs. DOC nursing protocols state that "[v]ital signs shall be taken for inmate patient encounters."

Juarez slept from noon to about 4:30 p.m. Juarez says he went to sleep because the medication was making him ill. At about 4:30 p.m., there was a count of the inmates, so Juarez stood outside of his cell for a few minutes. At that time, Juarez was groggy from his nap, but did not feel dizzy. A few minutes later, Juarez left his cell tier to go to the dayroom on his housing unit. When Juarez approached the top of the stairs, he either blacked out or became dizzy and fell down the stairs. Juarez was transported to Mile Bluff Hospital for a physical examination. The parties dispute the range of injuries he received, but the medical records from the hospital show that Juarez suffered multiple contusions and a possible shoulder strain. He received medication to treat muscle spasms in his back and pain. The doctor recommended discontinuing use of the Gabapentin, which he concluded may have been the cause of Juarez's dizziness.

The next day, Juarez saw defendant Felber. He states that he told Felber, "I told you that that medication was making me dizzy and ill!" and that Felber said, "I know, and I'm

3

sorry." Defendants deny that this exchange occurred. About two weeks later, Juarez was placed on a "lower tier/upper bunk restriction."

On April 10, 2015, Juarez was called to HSU to start a new medication.[2] Juarez met with defendant Hentz, who gave him a blister pack of medication. Juarez says that Hentz did not warn him about potential side effects. The blister pack of medication was a non-controlled medication, so Juarez was able to take the medication back to his cell for storage and self-administration. The back of the blister pack contained information about the medication. The information included potential side effects of the medication. The parties do not say what these side effects were. Before taking any of his new medication, Juarez read the back of the blister pack and knew the potential side effects. An upset stomach was the only side effect that Juarez experienced from the new medication.

ANALYSIS

I granted Juarez leave to proceed on Eighth Amendment and state-law negligence claims against (1) defendants Walter and Felber for disregarding the risk of harm he faced in February 2015 from the dizziness caused by his Gabapentin; and (2) defendant Hentz for disregarding the risk of harm he faced in April 2015 from another medication he was prescribed. The parties have filed dueling motions for summary judgment on these claims.

---

[2] The parties do not discuss the name of this medication in their proposed finding of fact, nor is it identified in Juarez's deposition, which is the source for most of defendants' proposed findings about the second medication. In his complaint, Juarez called this medication "Tamiramate," but I stated in the screening order that my own research did not reveal any drug by that name. I stated that the drug may have been Topiramate, another anticonvulsant. *See* Dkt. 4, at 2.

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). All reasonable inferences from the facts in the summary judgment record must be drawn in the nonmoving party's favor. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). If the nonmoving party fails to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the moving party is proper. *Celotex*, 477 U.S. at 322.

A.  **Defendants Walter and Felber**

   1. **Eighth Amendment**

In my order screening Juarez's complaint, I stated that although the Eighth Amendment prohibits prison officials from acting with deliberate indifference to prisoners' serious medical needs, Juarez was not alleging that defendants were mistreating his underlying medical condition. Dkt. 4, at 3. Instead, I took him to be saying that defendants disregarded the risk of harm he faced from the side effects of his medications. *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (prisoner states Eighth Amendment claim where he alleges that he faced a "substantial risk of serious harm" and prison officials acted with "deliberate indifference" to that risk)).

Juarez states that defendant Walter failed to tell him anything about the side effects of the medication, and that although defendant Felber later mentioned that dizziness is a side effect, she failed to take his vital signs or restrict him to a lower-tier cell, where he would

5

not have to use the stairs. Juarez stresses that DOC policies required the nurses to inform him about the side effects of his medication and take his vital signs. I take him to be saying that if they had followed these protocols, they would have realized that he should not be using stairs.

Defendants first argue that dizziness is not a serious medical need. But this misses the point. The risk of harm Juarez faced was not the possibility of dizziness itself; it was the risk that harm could come to him because of the side effects of the medication. The question is whether defendants knowingly exposed Juarez to a substantial risk of serious harm:

> If [prison officials] place a prisoner in a cell that has a cobra, but they do not know that there is a cobra there (or even that there is a high probability that there is a cobra there), they are not guilty of deliberate indifference even if they should have known about the risk, that is, even if they were negligent—even grossly negligent or even reckless in the tort sense—in failing to know. But if they know that there is a cobra there or at least that there is a high probability of a cobra there, and do nothing, that is deliberate indifference.

*Billman v. Indiana Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (citations omitted).

It is easy to see why sharing a cell with a cobra creates a substantial risk of serious harm. It is much more difficult to see a *substantial* risk here. The risk of injury caused by dizziness or blacking out from the medication apparently came to fruition here.[3] But the fact that an accident happened does not necessarily mean that defendants Walter and Felber were *deliberately indifferent* by failing to stop it, particularly where Felber actually did try, albeit ineffectively, to help Juarez: she told him to drink more liquids to fight the dizziness. Juarez focuses on defendants' failure to follow nursing protocols to inform him about the side effects

---

[3] At trial, defendants would be free to put on evidence showing that Juarez's injury was not actually caused by side effects from the medication. But at the summary judgment stage, I draw the reasonable inference that Juarez's fall was caused by his reaction to the medication.

6

and check his vital signs, but the failure to follow nursing protocols does not in itself violate the Eighth Amendment. The real question here is how substantial of a risk Juarez faced at the time he was seen by Walter and Felber.

I conclude that Juarez fails to present facts raising a reasonable inference that the risk was serious enough for defendants' actions to violate the Eighth Amendment. He does not explain why Gabapentin is so inherently dangerous that he could not be trusted to walk around the prison while taking it. My own research into the side effects of this medication suggests that dizziness, drowsiness, and loss of coordination are common side effects:

> Gabapentin may cause vision changes, clumsiness, unsteadiness, dizziness, drowsiness, sleepiness, or trouble with thinking. Make sure you know how you react to this medicine before you drive, use machines, or do anything else that could be dangerous if you are not alert, well-coordinated, or able to think or see well. If these side effects are especially bothersome, check with your doctor.

*See* www.mayoclinic.org/drugs-supplements/gabapentin-oral-route/precautions/drg-20064011.[4] Notably, blacking out is not one of the listed side effects. And moving around the prison is inherently less dangerous than operating a car or heavy machinery. A general increase in clumsiness might place a person at bigger risk of a fall, but there is no evidence that defendants were aware of such a substantial risk that they were deliberately indifferent by failing to immediately take safety steps to avoid a fall. For instance, there is no evidence that Juarez had difficulty standing or conversing during his meetings with defendants. Rather, he was able to walk to and from those appointments. This understandably would give defendants reason to think that Juarez would be safe while taking Gabapentin.

---

[4] *See also* http://www.webmd.com/drugs/2/drug-14208-8217/gabapentin-oral/gabapentin-oral/details/list-sideeffects (naming "Clumsiness or unsteadiness" as potential side effects).

Juarez paints himself as someone uniquely susceptible to side effects given his history of problems "tolerating" medication, but he does not develop this issue enough to add much to the analysis. Although his proposed findings do not explain what types of problems he had with the previous medications, an exhibit to his deposition shows that he suffered dizziness and shortness of breath from one medication, and abdominal cramps and vomiting from another. Dkt. 31, at 37. Even assuming defendants knew this information when they met with Juarez, it is not enough to transform their admittedly cursory treatment of him into deliberate indifference of a substantial risk of harm. Given the relatively bare factual record developed by Juarez, no reasonable jury could conclude that defendants knew of but disregarded a substantial risk to Juarez's safety. Defendants Walter and Felber are entitled to summary judgment on Juarez's Eighth Amendment claims.

2.  **Negligence**

Juarez also brings negligence claims against Walter and Felber.[5] The precise nature of the cause of action here is somewhat unsettled under Wisconsin law. Defendants suggest that if his claims were classified as medical malpractice claims, they would have to be dismissed because he does not have expert testimony showing that defendants' actions fell below the standard of care. This is not necessarily a reason for me to dismiss the claims—it might instead be a reason to recruit counsel for Juarez to help him obtain expert testimony.[6] But Juarez cannot bring medical malpractice claims against defendants under Wisconsin Statutes

---

[5] I am dismissing all of Juarez's federal claims in this opinion. Because Juarez's state-law claims are so related to his federal claims and can easily be disposed of in this opinion, I will retain jurisdiction over them.

[6] Juarez does have a pending motion for recruitment of counsel, but he filed it because he faced being deposed by the state. Dkt. 27. That alone is not a reason to recruit counsel, so I will deny the motion.

Chapter 655, because nurses are not "health care providers" within the meaning of that chapter. *See Patients Comp. Fund v. Lutheran Hosp.-La Crosse, Inc.*, 216 Wis. 2d 49, 573 N.W.2d 572, 575 (Ct. App. 1997) ("nurses employed by a hospital to participate in the care of a hospital's patients, with the exception of nurse anesthetists, are not defined as health care providers").

Assuming that there are other negligence-based causes of action Juarez might be able to bring against defendants, there is no question that he fares better on the substance of a negligence theory than on a deliberate indifference theory: defendants' failures to follow their procedures for informing about side effects and taking vital signs suggest that they breached a duty toward Juarez. But as defendants point out, any negligence claims Juarez brings must be dismissed because he did not fully comply with the notice-of-claim statute, Wisconsin Statute § 893.82.

Among other requirements, the statute mandates that the notice of claim includes "the names of persons involved, including the name of the state officer, employee or agent involved." Section 893.82(3). Juarez filed a notice of claim in March 2015 discussing his February fall, but he does not name Walter, Felber, or any other state official in that notice. Dkt. 35-1. This is fatal to Juarez's negligence claims because a plaintiff must strictly comply with the notice-of-claim statute to proceed with his claim. Section 893.82(2m) ("No claimant may bring an action against a state officer, employee or agent unless the claimant complies strictly with the requirements of this section."); *Kellner v. Christian*, 197 Wis. 2d 183, 194-95, 539 N.W.2d 685, 689-90 (1995) ("We read [subsection (2m)] to indicate that a claimant must adhere to each and every requirement in the statute."). This includes identifying the state officials who violated the plaintiff's rights. *Protic v. Castle Co.*, 132 Wis. 2d 364, 369,

392 N.W.2d 119, 122 (Ct. App. 1986); *abrogated on other grounds by Bicknese v. Sutula*, 2003 WI 31, 260 Wis. 2d 713, 660 N.W.2d 289. Because Juarez has not complied with the notice-of-claim statute, I will dismiss his negligence claims.

**B. Defendant Hentz**

Juarez's support for his claims against defendant Hentz regarding the second medication is thinner than his claims against Walter and Felber. In his complaint, Juarez stated that Hentz's lack of warning about the second medication led to a "serious physical injury," Dkt. 2, at 9, but the summary judgment record does not bear that out. Rather, the only harm Juarez says he suffered was an upset stomach, which is a common minor side effect of medications and not one that could reasonably support a claim for relief.

Moreover, Juarez admits that the side effects of that medication were printed on the blister pack he was given by Hentz, and that he read those instructions. Neither party explained whether upset stomach was listed as a potential side effect of this medication. If it was listed, Juarez's theory of relief is contradicted by the record: Hentz provided him with that information. If it was not listed, Juarez has failed to show that Hentz had any knowledge that the medication could harm him. Either way, defendants are entitled to summary judgment on his claims against Hentz. And any negligence claim he has against Hentz will be dismissed because he did not file a notice of claim about the second medication.

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment, Dkt. 32, is GRANTED.

2. Plaintiff Elpidio Juarez's motion for summary judgment, Dkt. 36, is DENIED.

3. Plaintiff's motion for the court's assistance in recruiting him counsel, Dkt. 27, is DENIED.

4. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered July 7, 2017.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge